IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Bird Industries, Inc, | ) | |
| A South Dakota Corporation, and | ) | Case No. |
| Laura Bird, Individually, | ) | |
| Plaintiffs, | ) | |
| vs | ) | |
| | ) | COMPLAINT WITH |
| Three Affiliated Tribes of the | ) | JURY DEMAND |
| Fort Berthold Indian Reservation, | ) | |
| and Frank Grady, individually. | ) | |
| Defendants, | ) | |

**TYPE OF ACTION**

[1] This is a civil RICO action brought pursuant to 18 U.S.C. § 1962 thru1964. The predicate acts for this RICO claim are violations of Title 18 of the United States Code and are detailed below.

**JURISDICTION & VENUE**

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and § 1332.There is also a specific grant of federal jurisdiction in 18 U.S.C. § 1964.

**PARTIES**

[3] Bird Industries Inc. (hereafter "Bird") is a duly organized, South Dakota Corporation, in good standing, located at 676 Park Ave, Brookings, SD 57006-3533. At all times relevant to this action, Bird was authorized to do business in South Dakota and in North Dakota and had offices located at 400 East Broadway Ave, Suite 306, Bismarck, N.D. 58501. Laura Bird is the owner and President of Bird. Her address is 504 West 8th St, Brookings, SD 57006.

[4]     Defendant, Three Affiliated Tribes of the Fort Berthold Indian Reservation, (hereafter "TAT") is located in North Dakota, is an Indian Nation operating under a Charter granted by the United State Secretary of Interior pursuant to the Indian Reorganization Act of June 18, 1934.  At all times relevant to this action, the TAT Indian Nation consisted of 6 geographical Segments, one of which is the Three Affiliated Tribes-Four Bears Segment (hereafter "TAT-FBS").  The governing body for all six (6) segments is the Tribal Business Council (hereafter "TBC").

## CONTROL AND AUTHORITY

[5]     Section 5 (a) of the Constitution of TAT provides that the TBC has the power and authority to manage all economic affairs and enterprises on the Reservation TAT, in accordance with the charter, issued to it by the Secretary of Interior.  Exercising this power and authority TAT adopted a Constitution and Bylaws that gives the TBC the power and authority to allow businesses to incorporate to expand economic opportunities for the Reservation (Tribal Resolution 11-126-VJB November 11, 2011).  The TBC enacted a Tribal Business Corporation Act, Section XXXVI that authorized the creation of businesses pursuant to the Constitution and Bylaws and allows formation of subsidiary corporations to enter into business associations and other business arrangements.  Pursuant to these powers, the TBC has chartered corporations, companies and other entities to engage in business.  The TBC allows corporations, companies and other entities to create arms, sub entities, corporations, joint ventures, LLC's and make other business arrangements.  Such arms include, but are not limited to, Fort Berthold Economic Development Corporation, a Joint Venture dated April 22, 2015, Lakeview Aggregates LLC, a Tribal Employment Rights Ordinance (TERO) and a Natural Resource Commission

(NRC). All of said entities are the responsibility of the TBC and are under its control and authority.

[6]     Frank Grady (hereafter "Grady") is an enrolled member of TAT. He is a former councilman of the TBC. On information and belief, his address is the Fort Berthold Indian Reservation at New Town, North Dakota. This action is brought against Grady in his individual capacity.

## FACTS

[7]     On April 22, 2015, TAT through one of its Segments, TAT-FBS, entered into a Joint Venture agreement (hereafter "JV") with Bird for the stated purpose of having Bird provide funds, equipment, management, and manufacturing knowledge to produce aggregates and ready-mix products for sale to the general public.

[8]     Pursuant to the JV, Bird was to receive 40% of the net income generated by the aggregate manufacturing operation. Bird was to contribute 50% of the first quarters cost of goods and services. Bird was to receive 49% of the net income generated by the ready-mix operation and contribute 50% of the costs of goods and services for that operation over the week following execution of the JV.

[9]     Pursuant to the JV, TAT-FBS was to receive 60% of the net income generated from the aggregate operation. TAT-FBS contracted to contribute 50% of that operation's first quarter cost of goods and services. TAT-FBD was to receive 51% of the net income generated by the ready-mix operation and contribute 50% of the first quarters cost of goods and services over the week following execution of the JV.

[10]    Lakeview Aggregates LLC was created to conduct the operations of the JV's aggregate and ready-mix business. TAT-FBS and Bird established a joint checking

account in the name of Lakeview Aggregates LLC at Wells Fargo Bank to receive all income and make all disbursements generated by Lakeview Aggregates LLC.

[11]   Commencing approximately June 1, 2015, Bird began to excavate and process aggregate and began development of a ready-mix plant.  In the months following, TAT-FBS defaulted on its agreement to contribute 50% toward cost of goods and services.  To continue operations, Bird advanced $3,007,888.98 for cost of goods and services, one half of which was the obligation of TAT-FBS.  TAT-FBS promised to reimburse Bird for any amounts advanced on TAT-FBS's behalf.

[12]   In June of 2016, Bird was advised by TBC Councilman, Frank Grady, and/or his staff, that Bird was being removed from all day-to-day activities of the aggregate and ready-mix operations.  Bird requested financial information about the operation but was refused.  Finding itself isolated and denied access to information about the JV and Lakeview's operations, Bird eventually commenced negotiations for a buyout of its interest in the JV.  In the course of negotiations, Bird was provided false and misleading information concerning past income and expenses of the project.  Critical production, sales, and financial information about the aggregate and ready-mix operations were knowingly and purposely omitted and/or distorted in order to mislead and defraud Bird.  Negotiators represented to Bird that the aggregate and ready-mix operations were losing money, that it was defunct and that it had no chance for survival.  Long after negotiations were completed and a buy-out completed, information previously undisclosed was discovered that showed the aggregate and ready-mix operations had in fact earned tens of millions of dollars in which Bird as a partner in the joint venture should have shared.  Bird was first offered $5,000.00 for its shares, then $25,000.00, then $75,000.00, then $250,000.00, and finally,

on or about May 23, 2017, $320,000.00 was offered.  Because of the false and omitted information Bird accepted the $320,000.00 and was paid that amount by a check signed by the Tribal Chairman which was drawn on an account controlled exclusively by the TBC.

[13]    Sometime in early 2018, Laura Bird received a telephone call from Brandon Bently (since murdered) who was by then a representative of Focus Energy a company located in Kenedy, Texas.  Focus Energy had been hired to manage the aggregate and ready-mix operation after Bird was removed.  Bently advised Laura Bird, President of Bird Industries, Inc, that he knew of his own knowledge that TBC Councilman, Frank Grady, had set up numerous bank accounts in North Dakota and other States to conceal the true finances and income from sale of aggregate and ready-mix.  Bently provided copies of bank statements from Cornerstone Bank in New Town, North Dakota and other documentation that confirmed the existence of bank accounts that had never been disclosed to Bird.  Bently also provided documentation that a corporate entity had been chartered in Texas with the identical name, Lakeview Aggregates LLC, to enable deposit and disbursement of funds from checks made out to Lakeview Aggregates LLC for the aggregate and ready-mix operations in New Town, N.D.

[14]    Pursuant to the JV at the beginning of operations, Bird dedicated equipment to the excavation and ready-mix projects.  Said equipment had a value of at least $660,500.00.  After Bird was removed from management of the project, the TBC engaged in fraudulent financial transactions that resulted in the TBC taking possession and claiming ownership of all of Bird's equipment with no consideration paid to Bird for its equity.  On information and belief, Laura Bird believes her signature may have been forged to accomplish the transfer.

[15]  In the course of its unlawful conduct, Defendants caused losses and damages to Bird by engagement in a criminal enterprise, by theft of property, conspiracy, breach of contract, and interference in business advantage costing Plaintiffs at least the sum of $45,755,888.98 or such other amount as will be proven at trial.

### RICO CLAIM # 1
**(Federal Civil RICO, 18 USC § 1341 Mail Fraud and 1343 Wire Fraud)**
**(Defendants, Three Affiliated Tribes & Frank Grady)**

[16]  Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth as a part of this Claim.

[17]  Defendants and each of them violated RICO and said violations proximately caused substantial damage, loss, and injury to Bird.

[18]  Each of the Defendants is a "person" as defined in 18 U.S.C. § 1961 (3)

[19]  Each of the Defendants violated, participated in violations, or conspired to violate provisions of Title 18 of the U.S.C.

[20]  Defendants, and each of them, knowingly engaged in activity as an association-in-fact for the common purpose of committing the predicate acts hereinafter described, such association constituting an enterprise within the meaning of 18 U.S.C. § 1961 (4) by engaging in the conduct of their affairs through a continuing pattern of racketeering activity.

[21]  The activity of the enterprise affected interstate commerce between and among North Dakota, Minnesota, South Dakota, and Texas and possibly other states.

[22]  Defendants and each of them by and through a racketeering enterprise knowingly, willfully, and unlawfully conducted or participated directly and indirectly in affairs of the enterprise through a pattern of racketeering activity made possible by the Defendants' regular and repeated use of the TBC, chartered corporations, LLCs, joint ventures,

facilities, services, personnel, equipment, credit, natural resources, utilities, money, and financial institutions checking accounts and did so with the specific intent of engaging in the substantive RICO violations alleged herein.

[23]   Defendants, and each of them, committed at least two predicate acts of racketeering activity which are indictable under provisions of the United States Criminal Code as more specifically detailed below.  The pattern of racketeering activity constituted a continuous course of conduct spanning a period of at least 5 years and the consequence of their unlawfully activities and refusal to disclose have not been resolved to date.  These acts had as their same or similar purpose concealment from Plaintiffs of the income and disbursements of proceeds received from the sale of aggregate and ready-mix in which Plaintiffs had a substantial interest by appropriation and disbursements onto themselves of funds and equipment belonging to Bird.

[24]   In carrying out its racketeering activity, Defendants committed predicate indictable acts because of the use of the U.S. Mails, use of internet wire services, both local and interstate, and use of in-state and interstate telephone services all in violation of U.S.C. § 1341 and 1343.  Business transactions, financial accountings, money transfers, and other manipulations were used by the Defendants and its employees, arms and entities for which it had responsibility, authority, and control, to commit fraud upon the Plaintiffs by transmissions of documents and money between banking facilities in North Dakota, Minnesota, and Texas and between persons and business entities in various locations of North Dakota, South Dakota, and Texas.

[25]   Specific predicate acts of fraudulent wire transfer took place during the period of October 12, 2016 to July 5, 2017 when at least 40 verifiable wire transfers totaling

$3,405,164.00 were made out of Account # DD2100005004 at Cornerstone Bank to American First FCU and Citibank NYC. This was an account the racketeering enterprise created and used to conceal income and disbursements from Bird in which Bird was entitled to share.

[26]     Specific predicate acts of fraudulent use of the U.S. Mail took place when a check dated September 27, 2016 for $998,300.00 signed by the TBC Chairman made payable to Lakeview Aggregates LLC from the TAT-TBC's Centralized Checking Account was mailed to Box 856860 Minneapolis, Minnesota 55485-6850 to be subsequently deposited into Account # DD2100005004 at Cornerstone Bank. This was an account concealed from Bird and from which Bird never received any partnership share.

[27]     In a specific predicate act of fraudulent use of the U.S. Mails on August 22, 2016, TBC Councilman, Frank Grady, sent a letter to Whitney Bell of the TBC's arm, TERO, alleging that the Joint Venture, a Tribally Owned Company, was experiencing financial difficulties when he knew and should have known that said statement was not true and was made with intent to deceive those who would rely upon said mid-representation.

[28]     Defendants, or their arms, entities, representatives, or agents chartered a corporate entity in the state of Texas called Lakeview Aggregates LLC using the same name as the TBC's arm and entity created in North Dakota to carry out the purposes of the JV. This was done for the express purpose of accommodating the deposit of checks intended for the North Dakota Lakeview Aggregates LLC in which Plaintiffs had an equal interest and in order to divert and conceal income and disbursements without having to pay or account to Plaintiff's for its contractual share.

**RICO CLAIM #2**
**(Federal Civil RICO, 18 USC § 1962 (d))**

**(Defendants, Three Affiliated Tribes & Frank Grady)**

[29]   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein as Claim # 2.

[30]   In violation of 18 U.C.S. § 1962 (d), Defendants each knowingly, willfully, and unlawfully conspired to facilitate a scheme that included operation or management of a RICO enterprise though a pattern of racketeering activity as alleged under Claim # 1 above.

[31]   The conspiracy commenced at least as early as 2015 and has continued to date.

[32]   The purpose of the conspiracy was to conceal income and profits of the JV's aggregate and ready-mix operations being carried out through Lakeview Aggregates LLC. This purpose was to deny Plaintiffs its share of income and allow Defendants to enjoy that income by disbursing it to themselves or others without Plaintiffs' knowledge.

[33]   Defendants' criminal enterprise engaged in a series of acts directly and through its arms and sub-agencies that were in furtherance of the conspiracy that continue to the present time including but not limited to:

    a.    Opened bank accounts undisclosed to Bird, a Joint Venture Partner, into which accounts income from the aggregate and ready-mix operations was deposited and later expended without disbursement to Bird of its share.

    b.    Provided false and fraudulent information to Bird that it knew would be used for tax reporting purposes in 2015 and 2016 causing Bird to file tax returns that failed to report millions of dollars of income that had been earned by Lakeview Aggregates LLC the operational arm of the Joint Venture created by TBC's entity TAT-FBS.

    c.    TBC councilmen used its arm and sub entity TERO to threaten Bird in an attempt to remove Bird from control over the income the aggregate and ready-mix business was bringing in under Bird management. This was done to intimidate Bird, create an illusion of operational failure and gain access to the income being generated by the operation for itself. The TBC Chairman personally appeared before the TERO commission to argue for revocation of Bird's license claiming Bird was not paying its bills. He knew or should have known that Bird's non-payment was caused by the Tribe or its arms failure to pay its 50% share of some $3,000,000.00 in startup costs

        and expenses it had contracted to pay. Bird expended in excess of $20,000.00 defending against the revocation of its license where the threat of revocation was caused by the Tribes own wrongdoing.

d. Made disbursements of at least $200,000.00 each from undisclosed bank accounts to persons not entitled including TAT Councilman, Frank Grady, thereby avoiding payment to Bird for its contractual share of the money being distributed.

e. Unlawfully used, refinanced, and ultimately appropriated unto itself equipment Bird initially owned and dedicated to the JV project as well as equipment subsequently purchased as documented by Tribal Resolution No. 16-153-LKH Sept. 2, 2015 and Cornerstone Bank Records.

f. Provided false and misleading financial statements and bank records concerning the income and disbursements from the aggregate and ready-mix operation to mislead and induce Plaintiff to sell its interest in the JV for pennies on the dollar.

g. Failed and refused to provide and disclose critical information to Bird at the time of its buy-out including the fact there were accounts receivable in the amount of $2,600,000.00.

h. Ignored and never paid to Bird its half-share of some $3,007,888.98 in startup costs as it had promised and contracted to do.

i. Directly paid the entire $320,000.00 from a TBC bank account for Bird's interest in the JV, knowing its agents and representatives had devalued the venture by providing false, fraudulent information and omitting information that had to be provided in order to make the information that was provided, not misleading.

j. Entered into an agreement to buy Bird's interest in the JV that contained a mandatory arbitration clause for resolving disputes should a dispute over the contract arise but when a dispute arose asserted in arbitration that the Tribe and its arms and entities had sovereign immunity precluding arbitration.

k. Represented to the Arbitrator that "The Tribe did not control or participate in the operations of FBEDC" knowing said representation was false in that Section 5 (a) of the Constitution of TAT provides that the Tribal Business Council held the power and authority to manage all economic affairs and enterprises on the Reservation.

l. Made an initial capital injection into the Joint Venture in the form of a Tribal asset, that being aggregate, having a value in the tens of millions of dollars.

m. By Resolution No. 16-069-LKH dated March 30, 2016, the TBC approved use of the Tribe's credit as guarantor of up to $15,000,000.00 by any of its Segments.

n. Extended $19,000,000.00 credit to one of its arms, the Four Bears Economic Development Corporation, to allow it to complete various Tribal projects using aggregate and ready-mix the income from which Bird should have shared. (Tribal Resolution No. 15-227-LKH December 17, 2015)

o. Invested and/or guaranteed some $1,031,278.49 to the Fort Berthold Economic Development Corporation to promote the aggregate and ready-mix venture as detailed in a Four Bears Economic Development Corporation Business Plan.

p. Three Councilmen of the TBC attended meetings of the Tribe's Natural Resource Commission where false statements were made by TBC, Councilman, Frank Grady, about the dire financial condition of the aggregate and ready-mix operation and its defunct future to soften up Bird for the purchase of its interest in the joint venture by the Tribe at a price far below its true value.

q. Entered into business contracts with third parties without the consent or knowledge of Bird that had the affect of reducing, giving, diverting, and impairing Bird's share in profits of the Joint Venture.

r. Bird managed the aggregate project from May of 2015 to June of 2016. As late as March of 2016, Reports showed the aggregate and ready-mix project was doing "extremely well". Two (2) months later, Tribal Councilman, Frank Grady, demanded that Bird leave the project. The TBC had complete control over all aspects of the aggregate and ready-mix operation so that unlawful disbursements could be made to entities and individuals through undisclosed bank accounts. Removing Bird also made it possible for employees, equipment, and product of the Joint Venture to be diverted to tribal projects without the consent or knowledge of the tribal arms partnership with Bird in the JV.

## CLAIM #3
### (Fraud)
### (Defendant Three Affiliated Tribes)

[34] Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if they were set forth in this Claim # 3.

[35] On information and belief, Defendant, Three Affiliated Tribes, its agents, arms, subsidiaries and entities knowingly and intentionally withheld information and refused to

disclose to Bird an audit and other information it has in its possession that verifies and substantiates the extent of the fraud that was committed on Bird in the operations of the aggregate and ready-mix businesses and the theft of property.

[35]   Defendants' concealed information in its possession concerning the fraud committed and the theft of Plaintiff's funds taken directly that proximately caused and continues to cause injury and damage to the Plaintiffs' business, reputation, and property. Defendants' conduct has interfered in Plaintiff's relationships with customers, potential customers, government agencies, and lending institutions.

[36]   The TBC falsely represented to an Arbitrator that its involvement in the aggregate and ready-mix transactions and operations were separate and distinct from the Tribe and that the Tribe is not and was not responsible for the actions of the arms and entities it had created and over which it exercised control and authority.  Included in its involvement, however, is this partial list:

- a. By Resolution No. 16-153-LKH, the TBC authorized the TBC-FBS to lease heavy equipment from Kinetic Leasing, Inc. which it knew was for the purpose of mining and processing aggregate pursuant to a Joint Venture Agreement entered into by TBC-FBS and Bird Industries as its partner.  By Resolution 19-009-CSB, the TBC approved a settlement agreement with Kenetic Leasing, Inc on 1/10/2019 involving Bird's equipment without the consent of Bird.

- b. By Resolution No. 15-149-LKH, the TBC authorized a Gravel and Aggregate Lease of a Tribal asset between the Tribe and its arm the Four Bears Economic Development Corporation-Four Bears Segment over which it had authority and control to make possible the mining of aggregate and processing of ready-mix.

- c. Three members of the TBC attended hearings of the Natural Resource Commission where Bird was on the agenda for discussion about the future of the aggregate operation.  A buy-out of Bird's interest was a subject matter.  A councilman, Frank Grady, knowingly and falsely represented the condition of the operation as financially dire and likely to go defunct in order to deceive Bird as to past income and success of the aggregate and

        ready-mix venture and to lure Bird into acceptance of a buy-out price for its interest past and present that was far below actual value.

d.     The Chairman of the TBC attended and participated in a TERO meeting where revocation of Bird's license to do business for non-payment of Contractors on the aggregate and ready-mix project was a subject matter. The Chairman knew or should have known that non-payment of contractors by Bird was the result of the Tribe or its sub-agencies and arms not paying approximately $1.5 million dollars in startup costs and expenses it had contracted to pay but which Bird had to pay to salvage an ongoing business.

e.     The TBC paid $320,000.00 to Laura Bird directly from its Centralized Checking Account signed by its Tribal Chairman on May 30, 2017 by check # 2367065 for all of the ownership interest Bird had in the Joint Venture operation to excavate and sell Tribal aggregate.

f.     The Tribe erected a large Billboard along a well-travelled local highway announcing that the Lakeview Aggregate operation was a "Tribal" venture.

g.     By Resolution No 16-069-LKH passed March 30, 2016, the TBC approved a guarantee of repayment of $12,000,000.00 which its arm, the FBEDC borrowed to enable it to complete jobs using aggregate and ready-mix of the Joint Venture project.

[37]     The Tribal Business Council, through its arm the FBEDC, entered into a Buy-Out Agreement with Plaintiffs in which it inserted a provision for mandatory arbitration in the event of a dispute. When a dispute arose over the false and fraudulent representations made to Plaintiff as an inducement to sell its interest in the Joint Venture for pennies on the dollar, however, the Tribe took the position that the dispute cannot be arbitrated because of sovereign immunity. Inclusion of a provision for mandatory arbitration, however, constitutes a waiver of sovereign immunity pursuant to <u>C & L Enterprises, Inc. v Citizen Band Potawatomi Tribe of Okla</u>, 532 U.S. 411 (2011) and <u>Amerind Risk Management Corp. v. Malaterre,</u> 633 F.3d 680 (8th Cir. 2011).

[38]     The financial devastation caused by Defendants fraudulent actions has jeopardized Plaintiff's credit standing and reputation to a point where Laura Bird's 8 (A) Minority Preferential Business status has been suspended by the U.S. Small Business Administration

causing great loss to Plaintiffs and its competitive status in the businesses in which it engages.

[39]    Plaintiff seeks compensatory attorney fees and expenses plus punitive damages sufficient to deter Defendants from committing unlawful conduct in the future.

## PRAYER FOR RELIEF

[40]    WHEREFORE, Plaintiffs respectfully request that the Court:

A. Award compensatory, consequential, exemplary, and punitive damages to the Plaintiffs in an amount to be determined at trial;

B. Attorney fees and costs to the Plaintiff; and

C. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

[41]    Plaintiffs demand trial by jury on issues so triable.

Respectfully submitted this 30th day of March 2021.

IRVIN B. NODLAND, PC
Attorney for Plaintiffs
109 N 4th Street Ste. 300
Bismarck, ND 58501
irv@nodlandlaw.com
701-222-3030

/s/ Irvin B. Nodland