# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Bird Industries, Inc., and<br>Laura Bird, individually,<br><br>                Plaintiffs,<br><br>vs.<br><br>The Tribal Business Council of the Three<br>Affiliated Tribes of the Fort Berthold<br>Indian Reservation,<br><br>                Defendant. | **ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS**<br><br>Case No. 1:21-cv-070 |

___

Before the Court is a motion to dismiss for lack of jurisdiction filed by the Defendant on October 7, 2021. See Doc. No. 16. The Plaintiffs filed a response in opposition to the motion on November 29, 2021. See Doc. No. 25. The Defendant filed a reply on December 13, 2021. See Doc. No. 26. The Plaintiffs filed a surreply on January 13, 2022. See Doc. No. 29. For the reasons set forth below, the motion is granted.

## I.   BACKGROUND

Bird Industries Inc. is a South Dakota corporation with its principal place of business located in Brookings, South Dakota, and offices located in Bismarck, North Dakota. Laura Bird is the owner and president of Bird Industries. Bird is an enrolled member of the Three Affiliated Tribes. She resides in South Dakota.

The Defendant in this case is the Tribal Business Council of the Three Affiliated Tribes of the Fort Berthold Indian Reservation ("Tribal Business Council") which is located in western North Dakota. The Tribal Business Council is the governing body of the Three Affiliated Tribes ("Tribe"),

1

a federally recognized Indian Tribe. For purposes of political representation, the Fort Berthold Indian Reservation is broken down into six geographic segments. The Tribal Business Council consists of six elected councilmen, one from each segment, and a chairman elected at large. The Tribal Business Council is vested with the authority to manage all the economic affairs and enterprises of the Three Affiliated Tribes. The Tribal Business Council is responsible for all actions taken on behalf of the Three Affiliated Tribes including those taken in the name of any of its officers, arms, segments, employees, department managers, commissions, corporate entities, and subentities.

On April 22, 2015, the Three Affiliated Tribes-Four Bears Segment entered into a "Joint Venture" agreement with Bird Industries in which Bird Industries agreed to provide funds, equipment, management, and manufacturing knowledge to produce aggregates and ready-mix products for sale. Lakeview Aggregates, LLC, a North Dakota Limited Liability Company, was created to accomplish the purpose of the Joint Venture. The agreement provided that Bird Industries would receive 40% of the net income generated by sales from the aggregate businesses and 49% of the net income generated by the ready-mix operation. The Three Affiliated Tribes-Four Bears Segment would receive 60% of the net income generated by sales from the aggregate businesses and 51% of the net income generated by the ready-mix operation. Both parties were to contribute 50% of the first quarter's cost of goods and services. The agreement specified that "[a]ny and all disputes shall be in the exclusive jurisdiction of the Fort Berthold District Court and the laws of the Three Affiliated Tribes shall apply exclusively." See Doc. No. 18-2, p. 4.

In June of 2015, Bird Industries began excavating aggregate and the development of a ready-mix plant to process aggregate and manufacture concrete. In the following months, the Tribal Business Council defaulted on its agreement to contribute 50% toward the cost of goods and services for the project. As a result, Bird Industries advanced $3,007,888.98 to cover the cost of goods and

2

services for the project, one half of which was chargeable to the Tribal Business Council.

In June of 2016, the Tribal Business Council, in the belief that Bird mismanaged the project, advised Bird Industries that it was being removed from all day-to-day activities of the aggregate and ready-mix operations. The Tribal Business Council demanded that Bird Industries sell its interest in the Joint Venture. The parties began negotiating a buyout. To assess the value of its interest, Bird Industries requested financial and sales information. The request was denied. In the course of the negotiations, the Tribal Business Council provided Bird Industries with information concerning the project's past income and expenses which Bird Industries contends were misleading. Bird Industries contends that records relating to assets, production, sales, financial disbursements, accounts receivable, and work in progress went undisclosed or were distorted in order to give Bird Industries the impression the operation had little or no monetary value and little chance for success.

In May of 2017, Bird Industries accepted a $320,000.00 offer to sell its interest in the project and Lakeview Aggregates LLC to the "Four bears Segment d/b/a Four Bears Economic Development Corporation, a Three Affiliated Tribes charted not-for profit corporation." See Doc. No. 22. The purchase agreement contains a choice of law provision that states the agreement is to be governed by the law of the Three Affiliated Tribes. See Doc. No. 22, ¶ 6.2. The parties also agreed to arbitrate all disputes related to the agreement and that California law would govern the arbitration. See Doc. No. 22, ¶ 6.9.1.

After Bird Industries sold its interest in the project, a company from Texas, Focus Energy, was hired to do marketing and perform some management functions for the aggregate and ready-mix operation. In October of 2018, Laura Bird was informed by an employee of Focus Energy, Brandon Bentley, that the Tribal Business Council had established numerous bank accounts in North Dakota, Texas, and other states to enable it to hide millions of dollars in income from the sale of aggregate

and ready-mix owed to Bird Industries and make disbursements to persons who were not so entitled.

Bentley told Bird that councilman Frank Grady and Jolene Lockwood had conspired to get Laura Bird and Bird Industries removed from the project in order to gain control over the project's funds and assets. Bentley also told Bird that there were bank records from bank accounts at Cornerstone Bank that had not been disclosed to her or Bird Industries that would confirm his accusations. Bird was able to obtain these records from another Focus Energy employee, Kirt Bailey, and which she contends confirm Bentley's accusations.

In addition, Bird Industries alleges several instances of fraud and theft by the Tribal Business Council including the interstate transportation and sale of equipment which Bird Industries claims an interest in, and withholding millions of dollars of profits owed to Bird Industries from the project. In support of its assertion of a continuing criminal enterprise, Bird Industries contends the Tribal Business Council has committed similar acts of fraud and theft of money owed to contractors who it hired to do construction work on reservation projects but were not paid for their work. It is alleges these predicate acts violate 18 U.S.C. § 2314 which prohibits the interstate transportation of stolen property.

Laura Bird did not learn of these activities until October of 2018. On October 23, 2019, Bird filed a demand for arbitration with the American Arbitration Association as contemplated by the purchase agreement. See Doc. No. 18-8. The demand for arbitration named both the Three Affiliated Tribes and the Four Bears Segment Economic Development Corporation as Respondents. The parties selected former federal Magistrate Judge Karen Klein as the arbitrator. On November 12, 2019, the Respondents filed a motion to dismiss. Discovery was permitted on the issue of sovereign immunity and waiver thereof. Ultimately, the arbitrator dismissed the matter on December 28, 2020. The arbitrator determined that the Respondents were immune from suit based upon tribal

sovereign immunity and that no waiver had occurred. See Doc. No. 18-9, p. 5.

The Plaintiffs commenced this action in federal court on July 1, 2021. The complaint contains two claims. The first claim is a civil RICO action (18 U.S.C. § 1962(c)) by Bird Industries against the Tribal Business Council. The second claim is made by Laura Bird against the Tribal Business Council for theft, fraud, and interference with business advantage. The Defendant has filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction which has been fully briefed and is ready for disposition.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the Court to resolve prior to trial. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). The Plaintiff bears the burden to prove subject matter jurisdiction exists. Herden v. United States, 726 F.3d 1042, 1046 (8th Cir. 2013).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. Osborn, 918 F.2d at 729 n.6. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal citations omitted). The complaint may also be supplemented by "undisputed facts evidenced in the record." Id. at 730. "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. at 729 n.6 (internal citation omitted). If a defendant wishes to make a factual attack on the jurisdictional allegations of the complaint, the court may

receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the Defendant makes a factual attack by citing to numerous documents outside the pleadings in support of its contention that the Court lacks subject matter jurisdiction. The issue of tribal sovereign immunity is jurisdictional and, as such, the motion is an attack on the jurisdictional facts alleged in the complaint. Smith v. Babbitt, 875 F. Supp. 1353, 1359 (Dist. Minn. 1995). Thus, the Court may consider matters outside the pleadings to the extent necessary in ruling on the motion. Id.; Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019); Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 637 n. 4 (8th Cir. 2003).

### III. LEGAL DISCUSSION

The Tribal Business Council contend this Court lacks jurisdiction and asks that the action be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Specifically, the Tribal Business Council contends the Court lacks subject matter jurisdiction based upon the intra-tribal dispute doctrine, the Plaintiffs failure to exhaust their tribal court remedies, and the doctrine of sovereign immunity. The Plaintiffs maintain the Court has jurisdiction.

#### A. INTRA-TRIBAL DISPUTE DOCTRINE

The Tribal Business Council contends the Court lacks subject matter jurisdiction over this RICO action, 18 U.S.C. § 1961 *et seq*., because the dispute is intra-tribal. Federal courts have long acknowledged the principle that it is important to guard the authority of tribal governments over their people. Longie v. Spirit Lake Tribe, 400 F.3d 586, 589 (8th Cir. 2005). This is especially true with regard to intra-tribal disputes. Id. Federal courts should only exercise federal question jurisdiction

in cases involving tribal affairs when federal law is determinative of the issues involved. Typically, the intra-tribal dispute doctrine has been applied to cases involving tribal "membership determinations, inheritance rules, domestic relations, and the resolution of competing claims to tribal leadership." Miccosukee Tribe of Indians of Fla. v. Cypress, 814 F.3d 1202, 1208 (11th Cir. 2015); see also Longie, 400 F.3d at 589 (finding intra-tribal dispute doctrine applied to a dispute between the tribe and a tribal member over a land transfer); Sac & Fox Tribe of Miss. in Iowa v. Bear, 258 F. Supp. 2d 938, 944 (N.D. Iowa) (finding intra-tribal dispute doctrine applied to a dispute over whether the defendants are unlawfully in control of the tribe).

In this case, the action is brought pursuant the federal RICO statute, 18 U.S.C. § 1961 *et seq.*, and involves allegations of theft and fraud in violation of 18 U.S.C. § 2314. The RICO statute provides that the district courts of the United States shall have federal question jurisdiction over civil actions to prevent and restrain prohibited racketeering activity. 18 U.S.C. § 1964(a); 28 U.S.C. § 1331. Thus, this case turns on the application of federal law. The case does not involve any of the internal tribal affairs such as tribal membership, politics, or domestic relations to which the intra-tribal dispute doctrine typically applies. Thus, the intra-tribal dispute doctrine does not apply.

Further, the Eighth Circuit Court of Appeals has held that "tribal courts lack jurisdiction to adjudicate federal causes of action absent congressional authorization." Kodiak Oil & Gas (USA) Inc. v. Burr, 932 F.3d 1125, 1135 (8th Cir. 2019). The question of whether a tribal court has exceeded its jurisdiction is a matter federal law. Longie, 400 F.3d at 590. No provision of the RICO statute authorizes tribal court jurisdiction. See 18 U.S.C. § 1964; Cf. Nevada v. Hicks, 533 U.S. 353, 367-68 (2001) (tribal courts are not courts of general jurisdiction and cannot hear Section 1983 actions as congressional authorization is lacking). Thus, the Court concludes the tribal courts would lack jurisdiction. And since tribal courts clearly lack jurisdiction over RICO actions, the tribal

exhaustion doctrine is also inapplicable. Kodiak, 932 F.3d at 1133 (exhaustion is not required where the tribal court plainly lacks jurisdiction).

## B. TRIBAL SOVEREIGN IMMUNITY

The Defendant contends the Plaintiff's action is barred by the doctrine of tribal sovereign immunity. The Plaintiffs contend sovereign immunity has been waived by the Tribal Business Council.

It has been long been recognized that Indian tribes possess "common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59 (1978); Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 788 (2014) reaffirming that tribal sovereign immunity includes off-reservation commercial conduct); Kodiak, 932 F.3d at 1131. The question of tribal sovereign immunity is jurisdictional. Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 1043 (8th Cir. 2000). Indian tribes and their governing bodies may not be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of immunity by Congress. Baker Elec. Coop. v. Chaske, 28 F.3d 1466, 1471 (8th Cir. 1994). A waiver of tribal sovereign immunity cannot be implied. Hagen, 205 F.3d at 1043. Any purported waiver of tribal sovereign immunity must be "strictly construed in favor of the tribe." Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1245 (8th Cir. 1995). The burden for showing a clear and unequivocal waiver of tribal sovereign immunity rests upon the party asserting the waiver. Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680, 685-86 (8th Cir. 2011). Tribal sovereign immunity extends to tribal agencies, entities, and corporations. Id. at 685; Hagen, 205 F.3d at 1043.

The Plaintiffs do not contend Congress has abrogated the Tribe's sovereign immunity or that the RICO statute constitutes a waiver. Rather, the Plaintiffs contend the arbitration clause in the

purchase agreement for the sale of Lakeview Aggregates, LLC to the Four Bears Economic Development Corporation constitutes a waiver of the Tribe's sovereign immunity. The contention is unpersuasive.

As the arbitrator correctly explained, the waiver was invalid because it was never approved by the Tribal Business Council. The Four Bears Economic Development Corporation is a wholly owned subordinate entity of the Tribe. The Four Bears Economic Development Corporation's Articles of Incorporation explicitly provides it with sovereign immunity from suit identical to that enjoyed by the Tribe. See Doc. No. 18-3, at 9-10. To be valid and binding, any waiver of immunity by the Four Bears Economic Development Corporation must: (1) be explicit, (2) contained in a written contract, and (3) specifically approved by the Tribal Business Council. See Doc. No. 18-3, at 10. Further, even if those conditions are met any waiver "shall in no way extend to an action against the Tribe, nor shall consent to suit by the [Four Bears Economic Development Corporation] in any way be deemed a waiver of any of the rights, privileges, and immunities of the Tribe." See Doc. No. 18-3, at 10. There is no evidence in the record that the waiver/arbitration clause in the purchase agreement was approved by the Tribal Business Council.

Thus, the Court concludes, as did the arbitrator, that because the Tribal Business Council never approved the waiver, no valid waiver of the Four Bears Economic Development Corporation's immunity exists. Even if the Four Bears Economic Development Corporation had waived its immunity, such a waiver would not extend to the Tribe or the Tribal Business Council because the Four Bears Economic Development Corporation's Articles of Incorporation clearly limit the extent of the waiver such that it does not extend to the Tribe. See Doc. No. 18-3, at 10. In addition, the Tribal Business Council is the Defendant in this case and the Four Bears Economic Development Corporation is not. The Court concludes the Plaintiffs have failed to demonstrate the Tribal Business

Council has waived its immunity in relation to this action.

Even if the arbitration agreement was deemed a valid waiver it is limited to the arbitration of disputes arising out of the purchase agreement. The arbitration clause in the purchase agreement provides "all disputes concerning this Agreement shall be settled by arbitration." See Doc. No. 22, ¶ 6.9. The arbitration clause also provides that the award may be enforced in "any court of competent jurisdiction." See Doc. No. 22, ¶ 6.9.3. The waiver does not pertain to the Joint Venture agreement or any of the other instances of fraud alleged in the complaint which form the basis for the Plaintiff's RICO action. The arbitration clause cannot be read so broadly as to permit or authorize a RICO action in federal court. See C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., 532 U.S. 411, 422 (2001). While an arbitration clause can certainly constitute a waiver of sovereign immunity, a waiver cannot be implied and the arbitration clause in this case only contemplates arbitration proceedings related to the purchase agreement. See Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680, 685 (8th Cir. 2011). The arbitration clause in the purchase agreement makes no mention of disputes being resolved in federal, state, or tribal court and certainly not in a far reaching RICO action in federal court. The Plaintiffs seemingly recognized this as they were the ones who demanded arbitration. See Doc. No. 18-8. It was only when the Plaintiffs lost in arbitration that they filed this RICO action. The Court concludes that even if the waiver was valid, it only authorizes arbitration and is not broad enough to encompass a RICO action in federal court.

The Plaintiffs' reliance of *C & L Enterprises*, *Malaterre*, and *Shingobee* is misplaced. *C & L Enterprises* and *Malaterre* support a finding that the Tribal Business Council has not waived its sovereign immunity while *Shingobee* does not address the relevant issues.

In *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001) a construction company sued an Indian tribe to enforce an arbitration award. The case

10

arose out of a construction contract for roof repairs on a building owned by the tribe but not located on the reservation. Id. at 415. The contract between the construction company and the tribe contained an arbitration clause calling for binding arbitration. Id. When the tribe attempted to alter the terms of the contract, the construction company submitted a demand for arbitration. Id. at 416. The tribe claimed sovereign immunity and refused to participate. Id. The arbitrator ruled in favor of the construction company which sought to enforce the award in state court where the tribe again claimed sovereign immunity. Id. Several appeals ensued. The Supreme Court held the arbitration clause in the construction contract constituted an express waiver of sovereign immunity. Id. at 418. The Supreme Court explained that arbitration clause called for binding arbitration and enforcement of the arbitral award in any state or federal court with jurisdiction. Id. at 418-19. The tribe was required to adhere to the dispute resolution procedures outlined in the contract. Id. at 420. Notably, there is no language in *C & L Enterprises* which supports the idea of a blanket waiver of sovereign immunity as suggested by the Plaintiffs. The Supreme Court limited the waiver to the express language of the arbitration clause which called for arbitration pursuant to American Arbitration Association rules and judicial enforcement noting that the tribe "consented to arbitration and to the enforcement of arbitral awards in Oklahoma state court." Id. at 423.

In *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 688 (8th Cir. 2011) the Eighth Circuit Court of Appeals held that a tribal self-insurance risk-pool corporate administrator was entitled to tribal sovereign immunity. The Eighth Circuit explained that while the corporation's charter contemplated waivers of sovereign immunity any such waiver was required to be approved by the corporation's board of directors and this had not been done. Id. at 687-88. *Malaterre* is not unlike the present case where any waiver of sovereign immunity must be approved the Tribal Business Council. In both *Malaterre* and the present case, approval is lacking.

In *Shingobee Builders, Inc v. N. Segment All.*, 350 F. Supp. 3d 887, 889-90 (D.N.D. 2018) a construction company sued a tribal corporation in federal court for breach of contract based upon failure to pay for work performed. The case was dismissed for lack of subject matter jurisdiction because the tribal corporation was an extension of the tribe and thus was not a citizen of any state for diversity jurisdiction purposes. Id. at 898. The issue of sovereign immunity and waiver was not addressed and thus the case provides little guidance.

The Court concludes the Tribal Business Council is entitled to sovereign immunity and the Plaintiffs have failed to demonstrate an unequivocal waiver of that immunity as to the claims raised in this case. While the allegations in this case are deeply troubling, tribal sovereign immunity remains a matter of Congressional prerogative. See Michigan, 572 U.S. at 790. (deferring to Congress as to whether tribal sovereign immunity should be abrogated)

### IV.   CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss (Doc. No. 16) is **GRANTED**. The request for a hearing (Doc. No. 20) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 11th day of July, 2022.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court